We'll call the next case, United States v. Philip Chartock, Mr. Goldberger. Good morning. You may proceed. May it please the Court, my name is Peter Goldberger. It's my privilege this morning to represent Philip Chartock, who's the appellant here, the defendant below, and I've asked to reserve two minutes for rebuttal. That request will be granted. Thank you. Mr. Chartock was convicted of conspiracy to commit honest services mail fraud and aiding and abetting instances of honest services mail fraud that were committed by his friend and city councilman, Richard Mariano. He was also convicted on a causing theory of two counts of money laundering of the proceeds of two of the particular counts of honest services mail fraud. There are three points that I'd like to try to argue of the four in the brief. One point that we preserved is, as I'm sure you realize, against current panel precedent in the circuit, and I won't argue the stream of benefits bribery question. On Kemp. On Kemp, right. All the convictions in this case rest on insufficient evidence that Philip Chartock knew that Councilman Mariano had a duty under the city charter or under state law to disclose conflicts of interest. Yes. Let me stop you there and ask. As I read your opponent's brief, I understand them to be saying, we presented evidence and we argued to the jury, and the jury was instructed on both theories of honest services fraud, bribery, and the failure to disclose a conflict of interest. If that's true, and they did argue and demonstrate a bribery case, are your arguments about whether Mr. Chartock knew or understood something about the disclosure, are they still relevant? Are they still dispositive in your view? This is the alternate theory argument you're saying. We argued that there were insufficiencies in the bribery theory as well. I'm not asking you to accept that that's good. I understand, and the government didn't respond to that in their brief. I took that to be a kind of concession, as I said in reply. They never said anything in response. I think that's page 32 of our opening brief where I addressed that. I do understand the theory that you're addressing. It's, you know, of course, acknowledged in our brief. The reason it doesn't apply here is that there was not a correct jury instruction on the honest services fraud. That is, the judge didn't tell the jury that they would have to find this kind of knowledge. The Griffin alternate theory fallback for the government in cases that Your Honor is alluding to applies only where the jury has been properly instructed and the evidence is sufficient. And the theory is legally valid, as they would both be here. Were they not instructed about bribery? In other words, they were not instructed on, no, the point being that they were not instructed of the knowledge requirement that would go with the non-disclosure theory. The jury cannot have. Well, aiding and abetting, he told them that the government must prove beyond a reasonable doubt that the defendant knew that the crime charge was to be committed or was being committed. Didn't he tell them that? That's correct. But the crime charge requires this particular knowledge of a fact that the jury was never told was necessary. And he explained that to the jury, didn't he? No, no. The knowledge of the duty to disclose was omitted from the jury instruction, even though both parties. He must prove beyond a reasonable doubt that Consulman Mariano received a benefit, which he was required to disclose under state or local law, which he failed to disclose, or that he acted under a conflict of interest, which he was required to disclose but did not disclose. Isn't that pretty well? I'm not sure. I'm reading. Okay. If that's in the instructions. The district court stated that. Then I overlooked that passage, and it did not come up in the brief. But that was also omitted. The theory was also omitted. That is, the knowledge of the crime was also omitted from the indictment, which, of course, should allege the necessary mens rea for every offense. Yeah, but we've said in indictment, first of all, charging conspiracy, need not plead all the elements. And you really have to put someone on notice in indictment. You don't have to put all the elements in, do you really? You have to know what you're meeting as a defendant. The contention that a conspiracy count need not plead all the elements can easily be taken too far. That is, it's not to say that every omission is excusable. Every some technical allegations may be excusable, especially if they are properly referred to in the substantive counts to which the conspiracy count refers. But here, this knowledge was not alleged in any of the dozen or more specific substantive mail fraud counts. And I think that was – Mr. Goldberger, let me ask you this question. You concede that circumstantial evidence could prove that a private citizen like Mr. Chortok had knowledge of the public official's duty to disclose, right? Yes, of course. And that's the government's theory here. Yeah. But as I understand your position, you're disputing that in this case the circumstantial evidence was sufficient. And that's because it's equally consistent with a number of other theories and reasons why a person in this relationship, people in this relationship would be equally secretive. Haven't we said, though, there's no requirement that an inference thrown by a jury be the only inference possible? That was my next question. We work in tandem. Now, you've got to finish the question. That's why we use three judge panels. I'm sure you – well, Mr. Goldberger is familiar with U.S. versus I.C.C. Yeah. I mean, how do you get over that? That's right. Yeah. Well, it doesn't have to be the only inference, but if two inferences – there is no substantial basis for the jury to draw the inference that the government needs, that is, some inference that its purpose was to facilitate a nondisclosure required by ethics law. I'm not sure I understand. I'm sorry. If concealment of the payments isn't sufficient circumstantial evidence, what type of circumstantial evidence under your theory might be available to prove the required knowledge? Well, I've never been a prosecutor. I can't say how I would go about proving circumstantially, but something that has something to do with the duties of the councilman in his – some awareness of the annual report, some conversation that he had a report to file, something that shows – Well, there's – Chartalk, the owner of the steel finishing company, knows nothing about any of that. Why isn't it – well, I guess I'm just asking the same question, so maybe I'll get the same answer. I mean, that's an argument to the jury, isn't it? It was. Right. And was lost because there were – But insufficiencies like that. There were – there was a theory that the government advanced. There was evidence in support of that theory. It accepted that theory. Why is the theory of tax dodging any better than the one the jury chose to accept? I don't understand as a legal matter what you're standing on to say it's not enough because we have another theory. Because there's – because I don't accept the premise that there was some evidence that related to the government's chosen theory of nondisclosure. Under our law, isn't – don't we have precedent that says that hiding the information indicates a knowledge of the responsibility and a culpable conduct? By the public official, but not by the – certainly wouldn't be by the factory owner. I mean, how do you get around our decision in U.S. versus Panarello? Very similar. I think there was evidence of discussion of the public official's duties. And I don't have the details of that, but I did – of course, I looked at that and we talked about it in the brief. Yeah. I would refer to the brief, but the relationship between the two there was a lot closer. And I believe that Panarello was a lawyer. He had a relationship with this state senator that was rather different from the relationship here. If I could turn to the money laundering counts and the issue about the proceeds. Okay. The two money laundering counts here, counts 18 and 19, suffered from their own particular defect, apart from the – what we say is the problem with the mail fraud counts. And that is money laundering involves, of course, a financial transaction conducted with proceeds of a specified unlawful activity. That is, the activity specified in the indictment. And this Court has held in Conley and cases applying Conley that the funds involved in the commission of offense do not become proceeds of that offense until after the offense has been fully committed. That is, completed. Or a phase of an ongoing offense. Of an ongoing offense. Well, this is a scheme, isn't it? The scheme of mail fraud is not the offense. The offense is the use of the mails to execute the scheme on a particular occasion. The ongoing offense cases all involve continuing offenses. But in every circuit, mail fraud is not a continuing offense. Well, isn't the assertion here that there was an ongoing scheme to defraud and that in each instance – mail laundering wasn't charged as to the first payment. Yes. It was charged as to the second and third briberies. And that in those instances, the bribe had actually taken place already. It was the payment of the money to the third party. Yes. And that was the deposit. So, respond to that specifically. Where's the flaw in that reasoning? Because the offense is not the bribe. The offense is not the bribe. The offense is the mail fraud. Mail fraud, the scheme to defraud is not the offense. It's specified unlawful activity, right? Specified unlawful activity. Executing a scheme to defraud in violation of the mail fraud law is a specified unlawful activity, yes. And so, you're saying that the bribe, which is integral to the scheme to defraud, of which the final mailing is the last piece, is not a phase of the crime as to which the government can look or to which the government can look in saying it was part of a phase of specified unlawful activity. That's right. Because until the crime has been committed. Any case at all for that? All these cases, Connolly, this is how these cases apply. Not one of the cases, every one of which we discussed in detail in the brief. They do not take the ongoing offense and misapply it to say in the middle of the commission of an offense. An ongoing offense that has phases, each of which is a completed offense, a subsequent offense in the course of such offenses. Those were really sentencing cases, weren't they? Didn't they really deal with the application sentencing? That's how we, not the guidelines, but they certainly deal with the unit of prosecution, which has implications both for charging and for sentencing. But yes, that's where we start with. But they're not about the guidelines. Did you see Justice Alito's dissent in Santos that just came down? Yes. He didn't exactly agree with your interpretation. That's why he only got four votes. I know. And I would rely on Santos only to the point of saying that the Supreme Court reminds us that the proceeds element of money laundering is to be strictly construed and doubt about its scope to be given to the defendant where there is ambiguity and doubt. But this is not the same case as Santos. It would be nice if I could have hand-delivered a letter Monday afternoon saying so, but it isn't. We were waiting for your letter. I'm judicious. But certainly the application of the rule of lenity to the same element of the same offense by the Supreme Court on Monday should give us pause and teach caution to extend beyond anywhere where the line has already been drawn the idea of treating as proceeds money that is still in the course of the substantive offense being committed. There are no proceeds until the offense is done being committed, a particular substantive mail fraud offense. And remember each of these money laundering counts charge reference to a particular substantive offense, not the count one conspiracy, but count three or count four per se. That offense as charged in the indictment had not been committed at the time of the transaction. So I see my red light is on. I was hoping to argue the on or about issue, but I'm at your disposal. You still have two minutes. We'll have you back on rebuttal. Thank you, sir. Thank you. Mr. Zalsmer. Thank you. Good morning, Your Honors. May it please the Court. Robert Zalsmer on behalf of the government. Your Honors, with respect to the honest services charges, if I could begin with Judge Jordan's question, which I think is important, as to which counts we're dealing with here. It's very clear by my scorecard that there's no objection at all to counts two and count four, because those are two counts where the jury found liability based on their special interrogatory, only on the basis of the bribery theory. Now, Mr. Goldberger says that there's a challenge to the bribery charge that we overlooked. I don't know what that is. The only charge that I know of, the only objection involves the stream of benefits instruction that goes to the bribery charge. That was resolved by this Court in Kemp, and Mr. Goldberger has not pressed it this morning. All of his objections to the honest services fraud go to the second separate theory, which, according to the jury, was not found in counts two and count four. Now, as to count one, which is the conspiracy charge, Mr. Goldberger's point is well taken, that if there were a mistake in the jury instructions regarding the conflict of interest theory, that would create a problem under this Court's decision in Sime, that because the jury didn't specify which theory they were relying on, if they were incorrectly instructed regarding one legal theory, there would have to be a new trial. Now, my next argument, of course, is there was no mistake in the jury instructions. One thing I want to point out, and I'll do it if I may as I go through the argument, one mistake that we made in our brief was not specifying the standards of review accurately for a number of issues. Mr. Goldberger, my friend, was more honest about it in his brief. There are a number of issues that were not preserved at trial, and one of them is an objection to the jury instructions. There were no objections presented at all at the conclusion. Excuse me? Plain error. Right, so it's plain error review. But, of course, based on the quote that Your Honor Judge Van Antwerpen mentioned and a number of other quotes in our brief, which I believe are at pages 36 and 37 of our brief, the judge instructed extensively on the need to show that Mr. Mariano had a duty to disclose, that he failed to disclose, and that Mr. Chartok knowingly aided and abetted this crime. There was clearly a sufficient instruction regarding knowledge and certainly nothing approaching a plain error that would require reversal. And the same is true of the other counts of honest services fraud of which Mr. Chartok was convicted that rested on both theories. Even though the jury found both theories, it clearly found, and I'm referring to count three in particular, which is an honest services fraud charge where the jury found both bribery and conflict of interest. There his objections have no relevance because the jury independently said that it found the bribery theory. So there's not much here to the challenges, but I need to address what's been argued. It only goes to the conflict of interest theory. And as a result, other than that instruction issue that I've already talked about, it really only goes to count five and count six. Those are the two counts where the jury only found a conflict of interest violation and not bribery. And so those are the only two counts where we can talk about the other objections. One, that it wasn't charged in the indictment. Second, that the evidence was insufficient at trial. With regard to the first of those issues that it wasn't charged in the indictment, it was charged in the indictment. Again, this objection was not made at trial. There was never a motion to dismiss the indictment on this basis. And as this court most recently said in the same Kemp case that we keep talking about, an indictment is sufficient if it relies on the statutory language. And that's what this did. It clearly said aiding and abetting honest services fraud, failure to disclose, clearly cited Section 2, which is the aiding and abetting statute. And so I don't think you can find plain error or any error with respect to the indictment. That leads us, finally, with respect to honest services fraud, to the knowledge question. Two A, Your Honor. The final question is, did the government present sufficient evidence to prove beyond a reasonable doubt that Mr. Mariano knew, I mean, Mr. Chartok knew of Mr. Mariano's disclosure requirement and aided and abetted his failure to disclose and his taking of a discretionary action? And the answer is, obviously, as Judge Fischer, I think, might have suggested, it's hard to imagine what other evidence you could present other than the- have something, some comment from somebody somewhere that they heard the defendant say anything that would imply he understood there was a failure to disclose. I mean, it's not beyond the realm of hypotheticals to figure there could be proof, circumstantial or even direct in the way of an admission that he understood, oh, you have a duty to disclose. So short of that, which everybody agrees isn't in the record, how is the circumstantial evidence that he was hiding it and knew he was doing something bad, proof that he knew it was this something bad? Well, there was overwhelming evidence of concealment. Everything that the parties did was designed to conceal the fact that money was going to a Philadelphia City Councilman. I understand that. What I'm trying to do is get you to respond to the specific argument that as a matter of law there has to be evidence from which a jury could rationally infer a consciousness of guilt with respect to this element of the offense. Is that an accurate statement of the law? It is. My answer is that a jury can- well, the law is that there has to be evidence in the record from which a jury can reasonably infer knowledge. A jury can reasonably infer that when you write a check to a credit card company, when you write a check to a third party, when you put false entries in your bookkeeping records, when you create false invoices, when you create a false loan document, when you lie to the FBI, when you lie to the district attorney, when you conceal your payments to a Philadelphia City Councilman every way you can, any reasonable jury can infer that the purpose of this scheme is not to disclose to the public what is happening. The jury can certainly infer that when at the same moment Mr. Mariano is taking official actions benefiting the payors, when within months of receiving over $23,000, Mr. Mariano votes twice on legislation that favors the payors without disclosing to the public. If that's not evidence that a reasonable jury can infer a scheme to not disclose this information, it's hard to say what is. Other than direct evidence, which, again, as a prosecutor, I'd be delighted to have, not to be too disdainful of the argument, but if we ever had evidence that somebody could say, I was sitting there with Mr. Chartok and he was reading the Pennsylvania Code with his cup of coffee, we'll present it. That doesn't happen very often. It doesn't, and it's not required under any law. But was there any evidence here that there was any knowledge on Mr. Chartok's part that there was any such notice to disclose by anybody who was a public official? Well, again, I think it can be clearly inferred from the evidence there is simply no reason to go through all of these mechanics other than to not disclose. What about, and it's obviously not controlling on us, but I'm a bit troubled by the fact that in a case that was fairly close to this, Judge McLaughlin in the district court in Carbo came to a different conclusion. That's correct, Your Honor, and perhaps, Your Honor, we'll be on the panel. I don't know. The government has appealed that. We disagree with that decision. The evidence, I'm not. Doesn't it show at least that there's an issue here that courts are concerned about that the average citizen doesn't know that a public official needs to file these disclosure forms? Well, with all respect, we disagree with Judge McLaughlin's decision. It's the only decision in this district of that kind. It's the only one that we've appealed. The evidence there, I'm not sure, was as substantial as it is here, though the same issues do arise. Is Panarella different than this case? No, and the next thing I was going to say is that this court is bound by Panarella. That will be one of the premises of our appeal in the Carbo case, which is in Panarella the court said defendants do have notice. Now, Mr. Gorberger suggested, well, there might have been other evidence in that case that Panarella knew. The answer to that is no. Panarella never went to trial. Panarella was a strange objection to an indictment that this court considered after Panarella had entered a guilty plea. There was nothing on the record other than the indictment, and this court held that there was notice just from the state laws. Now, I would go further than that in this case. Don't you waive objections to the indictment by pleading to it, or is that not? We argue that, and we're not successful in Panarella, Your Honor. This court's decision was that an interpretation of Rule 12 allowed the appeal. Judge Becker suggested that Congress might want to look at that, and I don't believe any action has been taken since then. But the government did prevail on the merits once the merits were considered. In this case, an important thing to point out, one of the things— You require an express statement. How are you ever going to prove on these cases? Let's be frank about it. It's not going to happen. Well, you're not. The other thing that often comes up that I want to make sure I address is the nature of these financial disclosure forms, and I hear that in Mr. Gorberger's argument. How could you know that a city councilman has specific forms to fill out where he's not putting down all of these credit card payments and the other bribes that Mr. Mariano took? And the answer to that is that under Pennsylvania law, which we apply here pursuant to Panerella, the failure to disclose doesn't necessarily involve the forms at all. There is a duty to disclose under Pennsylvania law, under Philadelphia law, I think under the law of every state in this circuit, that a public official has a duty to disclose any conflict of interest, not on a form, disclose it if he is taking official action, particularly an elected official who is voting on legislation. At the moment that Mr. Mariano… Doesn't that requirement limit the disclosure to a personal interest? It does not. It limits it to a conflict of interest, which is defined under Pennsylvania law as any interest benefiting the defendant personally or politically, anything not related to his official function. I think it's section 1103 of the… Your argument is pinned, is it not, on the public notice sort of idea out of Panerella, right? No, it's not. That's part of it, and I think we prevail on it. Well, I understand all the circumstantial evidence you've described with respect to they were hiding something. But if you're relying just on that circumstantial evidence and not the Panerella theory, I'm still working to understand how it proves circumstantially the element that we're talking about right now, which is the responsibility to disclose. It certainly shows you knew you were doing something wrong, something badly wrong. But if the elements of the crime are more specific than don't do wrong things, but they include disclose something, how does the fact that you're hiding something in and of itself provide proof one way or another on that element? Because hiding is not disclosing. That's what we're dealing with here. Panerella, by the way, we rely on two points in Panerella. One is the point that the law itself gives notice to the citizenry that there is a duty to disclose. But the second thing in Panerella, Panerella does say that concealment is evidence of the disclosure requirement. The Kemp decision is also important here. In Kemp, you have the exact same argument presented by one of the defendants, Hawkins. Hawkins was in a similar position. He got a $5,000 check. He was a conduit. He passed it on to the city treasurer. His argument was exactly the same. Why couldn't this have been tax evasion? Why couldn't this have been something else? How do you prove that I knew that Kemp wasn't going to disclose this? And this court says a jury can make a rational inference. And that, in fact, this court said the most reasonable inference is the honest services fraud because it's the only theory that accounts for every piece of the evidence, including the fact that the recipient is a public official. So I stand on that. When you have evidence that you are concealing payments to a public official. I got you. And I can see you're running a little low. Okay. Thank you, Your Honor. You can infer knowledge from that. The only last point I'll make on that, I have. I'm wondering. Can I say one more thing about knowledge real quickly? The notion that there's an equally consistent version of the evidence, that's flatly inconsistent with the law. The law is, is there any reasonable inference that the jury could have relied on, regardless of any other inference that might be out there? The one thing I find very interesting is that the defendant's brief relies on this tax fraud theory, that that's the other equally consistent inference. It's very interesting that that was never even argued to the jury. The argument that was made to the jury was that the Shartoks didn't know about two of the checks at all. So it's something where, you know, you argue that you have an equally consistent inference that defense counsel did not have the temerity to suggest to a reasonable jury. The only reasonable inference in this case was the bribery theory. With regard to money laundering, Your Honor. Ways of an ongoing offense. I think that's what I would say. Right. I mean, this case is controlled by two cases, Conley and Morelli. Conley says very clearly that a money laundering transaction can be at the completed phase of an ongoing offense. That was clearly the case here with regard to the two transactions that are being challenged. In each transaction, Shartok gave a check payable to a third party and handed it to Mariano. At that point, he was basically done. He knew what he was furthering, which is that Mariano was then going to go convert it into a check to a credit card company. But he's done. He has paid the bribe at that point. The evidence was completely consistent. In fact, the defense relied on this quite a bit. That Shartok didn't even know the third party payers. That Mariano found them, went to them, took them the Erie Steel check, had them cut their own checks, send it to the credit card company. His argument, though, if I understand it right, is not that the bribery was complete, wasn't complete, but that the mail fraud wasn't complete and you're pinning this on the mail fraud and you had to have completed the mail fraud in order for the proceeds of that to be illegal. Right. And that's where Morelli comes in because the mail fraud in this case was completed each time a couple minutes later. Right after depositing and getting the new check, it was put in the mail, according to the indictment, on the same day. Morelli says, and I quote, when you have an entire ongoing fraudulent venture, then in that instance you can't charge the first transaction as money laundering if it comes before the mailing or wiring. But anything subsequent to the first wiring, you can charge as being promotion or concealment of the underlying ongoing scheme. Morelli is directly on point. There were a large number of wire transfers charged in an elaborate scheme the first time that the government did not charge money laundering. But then after the wiring completed the first go around, then later times the government did charge it. This is an identical case. You had three bribes. We only charged the last two as money laundering. Thank you, Mr. Zosman. Thank you, sir. Mr. Goldberger. The government relies on the alternate theory to justify the mail fraud convictions pointing to this jury verdicts. And I just want to call your attention to pages 17, 17, 17, 18 of the appendix. It's at the back of the last volume, the fourth volume. And you will see that the way the jury questionnaire was framed, their argument fails. Because the jury was not asked to distinguish between Philip Chartok and Lewis Chartok in picking theories. They were asked to circle which theory applied on which counts without specifying as to which defendant. So if they had the nondisclosure, if they believed the nondisclosure as to Lewis and the bribery as to Philip or the other way around, you couldn't tell that from the two circles on the form. So this is addressed in my brief and it refutes the argument that my friend, Mr. Zosman, makes about the instructions, the verdict. The argument that Mariano violated his nondisclosure duty without regard to state law, state statutes, later when he voted without disclosure, it doesn't help the government because obviously Philip Chartok had to have the guilty knowledge at the time he committed the offense, not some weeks later. If Mariano didn't decide to disclose or not disclose until he cast his vote in city council, that has no bearing on Philip Chartok's guilt. The position that Mr. Zosman relied on a moment ago in the alternative that the law itself gives notice, that's the district court's theory. That argument was waived by the government in their brief. That's not in the government's brief and we said so in the reply. So if I was wrong about that in reply, I would expect to have heard something from the U.S. Attorney's Office before they would get up and argue something that is abandoned in their brief after I attacked it in my brief relative to the district court's opinion. The inference, this is a case in which circumstantial evidence is the issue. An inference has to flow from a fact. It can't flow from a guess. There are no facts here that support the government's theory on knowledge of nondisclosure. And if I could just say that the Conley and Morelli cases in terms of the phase of the ongoing offense, neither of them helps the government here. Conley was a section 1955 gambling business case. That's a continuing offense by law. It has to extend over 30 days. And Morelli was, as your Honor asked me about another matter, a sentencing case about how to sentence complicated guidelines rule, about how to sentence in a RICO case. It was not about separate individual counts of mail fraud. Neither case helps the government. Thank you. Thank you, Mr. Goldberger. And thank both counsel for excellent arguments. We'll take the matter under advice.